UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT IN ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RAFAELA SOSA, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| | ) | No.l:10-CV-01693 |
| v. | ) ) | Judge Der- Yeghiayan |
| SUSIE'S DRIVE IN, LTD., RBS WORLDPAY INC. and GLOBAL CASH NETWORK, INC. | ) ) | Magistrate Judge Valdez ) |
| Defendants. | ) | |

**DEFENDANT SUSIE'S DRIVE IN, LTD.
RESPONSE TO MOTIONS TO DISMISS**

NOW COMES Defendant Susie's Drive In Ltd., by and through its attorney, Alan Rhine, and as its response to the Motion to Dismiss filed by RBS Worldpay Inc. and Global Cash Network, Inc. states as follows:

**Introduction**

Both RBS WorldPay, Inc. and Global Cash Network, Inc. in their Motion to Dismiss refer to contracts that are attached as exhibits in support of their Motions to Dismiss. Assuming that the Court will consider these exhibits, which are beyond the found corners of the complaint, Susie's Drive In Ltd. will address these contracts.

Assuming the Court finds that the Complaint states a plausible theory, the key issue in this case is whether any of the name defendants are the operator or operators of the ATM who imposed the transaction fee.

## I.  Contracts Attached to the Motions To Dismiss Are Not Definitive.

EFTA does not refer to owners, indicating that Congress did not intend that mere status as an owner of an ATM would impose the obligations of an operator.  Susie's Drive In Ltd., as its name indicates, is a drive in where people come for fast food.  The name Susie's Drive In Ltd. does not imply that it is in the business of providing a network where people around the globe can obtain cash.  The ATM located at this fast food restaurant is a convenience for customers who are short of the cash to pay for their food.

RBS WorldPay, Inc. entered into an ATM Service Distribution Agreement  [hereinafter referred to as "Contract"] with Global Cash Network, Inc.  This Contract in section 3.3 provides that Global Cash Network, Inc., in addition to other responsibilities, will be responsible for operation testing of Equipment, signage and operating manuals.

The Master Processing Agreement [hereinafter referred to as "Agreement"] is between Global Cash Network, Inc. and Susie's Drive In, Ltd.  The Agreement refers to Global Cash Network, Inc. As the "Company" and Susie's Drive In Ltd. as the "Merchant."  The Agreement has various provisions dealing with the operation of the ATM.  These include the following provisions:

> Company is in the business of providing processing services for ATMs
>
> Section 1. EQUIPMENT. Merchant shall place a(n) ATM(s) on its premises in an indoor location mutually agreed upon by the parties al the locations set forth on Exhibit 1.
>
> Section 2.  AVAILABILITY . . . Merchant shall make the ATM(s) available during reasonable business hours so that Company may perform maintenance or system improvements.

> Section 3. TRANSACTION PROCESSING FEES. . . . Company agrees to pay Merchant for each transaction made on the ATM(s).
>
> Section 5. PROCESS1NG SERVICES. Company agrees to provide data processing services through its agreement with such processing service company (ies) as Company, in its sole discretion, may select, to process authorized ATM transactions.
>
> Section 8. EXCLUSIVITY. Merchant shall not permit the installation of any other ATM on Merchant's Premises, nor permit the removal or the "ATM(s) from the Premises for the term of this Agreement, except as may be agreed by Company in writing or required by any lessor of the ATM(s).
>
> Section 9. DAMAGE, THEFT, LIABILITY I INSURANCE REQUIREMENTS. . . . Merchant agrees it shall make neither alteration nor addition to the ATM(s), and shall not permit anyone, other than authorized representatives of the Company, to perform any service or repair work on the ATM(s) unless it received Company's prior written authorization.
>
> Section 14. COMPANY: LIMITED LIABILITY TO MERCHANT. Company shall use reasonable efforts to comply with applicable laws and regulations, and to obtain necessary licenses, permits or registrations to conduct its business and provide processing services hereunder.
>
> Section 23. TRADE SECRETS. The processing services provided by Company consist in part of computer programs, procedures, forms, and other related material which have been acquired, licensed to or developed by Company at substantial expense. . . . All specifications, tapes, programs, services and trademarks, and related material developed by or for Company in connection with this Agreement shall be the property of Company and shall be returned to Company upon termination of this Agreement.

These provisions of the Contract and Agreement indicate that Susie's Drive In Ltd. is a passive actor who waits for transactions to be processed and fees to be paid. The Contract provides that transactions processed by Global Cash Network, Inc. are routed by RBS WorldPay Inc. Under the terms of the Agreement, Global Cash Network, Inc. pays Susie's Drive In Ltd. the transaction

fees. In the case of *Azose v. J.P. Morgan Chase Bank*, pursuant to a contractual agreement between Chase and Washington Mutual, when consumers used the Chase ATM, Washington Mutual paid an interchange fee to Chase. However this did not mean that Chase imposed the fee on transactions. *Azose v. J.P. Morgan Chase Bank*, 2010 U.S. Dist. LEXIS 6112 (E.D.N.Y. Jan. 26, 2010).

The passive role of Susie's Drive In Ltd. is further shown by provisions of the Agreement, which grant Global Cash Network, Inc. the sole discretion to make decisions, specifically Global Cash Network, Inc. has the sole discretion to select who will process authorized ATM transactions. In other respects to the operation of the ATM, Susie's Drive In Ltd. has limited authority. For example Susie's Drive In Ltd. is unable to alter the ATM. Susie's Drive In Ltd. is also unable to remove the ATM. All specifications, tapes, programs, services trademarks, and related material developed by Global Cash Network, Inc. are the property of Global Cash Network, Inc.

The Agreement does not state that Susie's Drive In Ltd. is the operator of the ATM. If Susie's Drive In Ltd. was both the owner and operator, it would not need the services of Global Cash Network, Inc. The division of the duties, rights and obligations do not impose the day to day operation of the ATM on Susie's Drive In Ltd. As shown by the provisions of the Contract and Agreement quoted above there is no simple answer to the issue of who is the operator. At a minimum it cannot be determined at this point in the litigation who is the operator of the ATM. Until this issue is resolved, it is premature to grant any motion to dismiss. Wherefore both Motions to Dismiss should be denied.

## II. Susie's Drive In Ltd. Is Not is the Operator.

It is contended by Global Cash Network, Inc. that to state a claim under Electronic Funds Transfer Act (EFTA) that the plaintiff must allege that a defendant is an ATM operator and that the defendant imposed a fee on a consumer to use the ATM.

EFTA's definition of the word "operator" is

> (i) Automated teller machine operator. The term "automated teller machine operator" means any person who--
> (I) operates an automated teller machine at which consumers initiate electronic fund transfers; and
> (II) is not the financial institution that holds the account of such consumer from which the transfer is made. 15 USCS § 1693b(d) (3) (D).

This definition does not differentiate as to which party is actually paid the transaction fee. RBS WorldPay, Inc. and Global Cash Network, Inc. have not cited cases that further clarify the word "operator" as used in EFTA. The cases of *Azose v. Wash. Mut. Bank* and *Azose v. J.P. Morgan Chase Bank* do not provide assistance in the issue before this court because in those cases, Chase was considered the automated teller machine operator. *Azose v. Wash. Mut. Bank*, 588 F. Supp. 2d 366 (E.D.N.Y. 2008).

The word operator has been discussed in cases applying the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA). The word operator should be given its ordinary meanings rather than a technical meaning. See *Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund*, 25 F.3d 417, 419 (7th Cir. 1994). In cases concerning the use of the word operator in CERCLA, the courts have held that operator's liability only attaches if the defendant had authority to control the cause of the contamination at the time the hazardous substances were released into the environment. To state a claim for CERCLA operator liability it

must be shown that party directly and personally engaged in conduct that led to the pollution at issue in the case. See *Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund*, 25 F.3d 417, 421-422 (7th Cir. Ill. 1994); *City of Waukegan v. Nat'l Gypsum Co.*, 587 F. Supp. 2d 997, 1006 (N.D. Ill. 2008).

In relation to being an operator, based on the analogy to the case under CERCLA, liability under EFTA only applies to the entity that had authority to control the cause of the harm, which is the failure to give notice to the user of the ATM. RBS Worldpay Inc. and Global Cash Network, Inc. have not shown that Susie's Drive In Ltd. had control over the programing of the ATM nor over the notice to the consumer. Without control over the programing, Susie's Drive In Ltd. could not program the ATM to charge a fee nor to give notice using the screen on the ATM.

The case before this Court presents a factual question as to whether the entity that programs the ATM imposes the fee. Based upon the unresolved factual question, the Motions to Dismiss by RBS Worldpay Inc. and Global Cash Network, Inc. should be denied.

The position of Susie's Drive In Ltd., is that the party that programs and provides data processing for the ATM is the operator. Wherefore both Motions to Dismiss should be denied.

### III. Posting of Signs

As noted above, the Contract provides that Global Cash Network, Inc. will be responsible for signage. The Complaint alleges that there was no sign posted warning of the imposition of the fee. However this does not mean that there was not any sign identifying who to contact in case of a problem with the operation of the machine. In relation to the determination of the operator of

the ATM, it is significant if there are any signs posted identifying one of the defendants. Until there is further development of the facts to determine if one of the defendants was identified as an operator by a sign, it is premature to grant any motion to dismiss. Wherefore both Motions to Dismiss should be denied.

                                          Respectfully submitted,
                                          Susie's Drive In, Ltd.

                                          [s] Alan Rhine

                                          Alan Rhine, attorney

Alan Rhine, State of Illinois Registration No. 232391
111 W. Washington, Suite 1505
Chicago, Illinois 60602
(312) 201-1770

7

**Certificate of Service**

I, Alan Rhine, being an attorney, hereby certify and attest under oath that on September 14, 2010, that pursuant to Court rules, including General Order of Electronic Case Filings (ECF), that Defendant Susie's Drive In, Ltd. Response to Motions to Dismiss was served, electronically addressed to:

      Lance A. Raphael lance@caclawyers.com

      Allison Amy Krumhorn@caclawyers.com

      Stacy Michelle Bardo@caclawyers.com

      Jason P Stiehl Seyfarth Shaw LLP jstiehl@seyfarth.com

      Jason T. Singleton jsingleton@pkalaw.com

      Patrick Christopher Keeley  pkeeley@pkalaw.com

      Thomas A. Jackson tjackson@pkalaw.com


      [s] Alan Rhine
      Alan Rhine, attorney


Alan Rhine,  State of Illinois Registration No. 232391
111  W. Washington,  Suite 1505
Chicago, Illinois 60602
(312) 201-1770