UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT IN ILLINOIS
EASTERN DIVISION


| | | |
|---|---|---|
| RAFAELA SOSA, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | No.l:10-CV-01693 |
| v. | ) ) | Judge Der- Yeghiayan |
| SUSIE'S DRIVE IN, LTD., RBS WORLDPAY INC. and GLOBAL CASH NETWORK, INC. Defendants. | ) ) ) | Magistrate Judge Valdez ) |


**DEFENDANT SUSIE'S DRIVE IN, LTD.
RESPONSE TO MOTIONS TO DISMISS**


NOW COMES Defendant Susie's Drive In Ltd., by and through its attorney, Alan Rhine, and as its response to the Motion to Dismiss filed by RBS Worldpay Inc. and Global Cash Network, Inc. states as follows:


**I. Standard to Review for a Motion to Dismiss**

To survive a motion to dismiss the bar is not high and the requirement is that the complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Bonte v. U.S. Bank, N.A.*, 2010 U.S. App. LEXIS 21476 (7th Cir. Oct. 19, 2010). Plausibility does not imply that the court should decide whose version to believe, or which version is more likely than not. The plaintiff is only required to give enough details about the subject-matter of the case to present a story that holds together because the test is whether these things could have happened, not did they happen. *Swanson v. Citibank, N.A.*, 614 F.3d

400, 404 (7th Cir. 2010).

In this case, at the pleading stage, the court should not seek to determine who was the operator that imposed the charges. RBS Worldpay Inc. and Global Cash Network, Inc. in their motions to dismiss ask the Court to determine that they were not the operators who imposed the charges. At this stage in the case, such a request is improper. The Court in determining whether to allow the case to go forward against RBS Worldpay Inc. and Global Cash Network, Inc. should not stack up inferences side by side in an effort to see if the Plaintiff's inferences seem more compelling than those of RBS Worldpay Inc. and Global Cash Network, Inc. See *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). The Plaintiff's allegations that RBS Worldpay Inc. and Global Cash Network, Inc. were either individually or jointly the operators of the ATM that imposed the charges are plausible on their face.

Wherefore the Motion to Dismiss filed by RBS Worldpay Inc. and Global Cash Network, Inc. should be denied.

## II. The Owner Does Not Have to be the Operator.

It is well known and that the Chicago Football team in the National Football League, the Chicago Bears, was originally formed and owned by George Halas. The ownership of the team has passed to his descendants, including his daughter Virginia McCaskey. As one of the owners, Virginia McCaskey receives the profits. Virginia McCaskey is listed in the records of the Illinois Secretary of State as the secretary of The Chicago Bears Football Club, Inc. However, Virginia McCaskey for all of her ownership interest, is not the person who throws interceptions and she is not the one who imposes the game plan. The game plan is imposed by the coaching staff.

Virginia McCaskey is one of the owners of the Chicago Bears, but on a day to day basis she does not operate the team.

EFTA does not refer to owners, indicating that Congress did not intend that mere status as an owner of an ATM would impose the obligations of an operator. As its name implies, Susie's Drive In Ltd. is a drive in where people come for fast food. The name Susie's Drive In Ltd. does not imply that it is in the business of providing a network where people around the globe can obtain cash. The ATM located at this fast food restaurant is a convenience for customers who are short of the cash to pay for their food. Just as Virginia McCaskey does not throws interceptions, Susie's Drive In Ltd. does not program ATM machines and does not prepare signs for ATM machines.

RBS Worldpay Inc. argues that any liability is on the operator if it imposes a transaction fee on a consumer. (See RBS WorldPay, Inc's Memorandum in Support of its Motion to Dismiss Plaintiff's First Amended Class Action Complaint [hereinafter RBS' Memorandum] at page 1.) RBS Worldpay Inc. goes off on a tangent to assert that Susie's Drive In Ltd. is the only entity that collects a fee from consumers that use the ATM machine at issue here. (See RBS' Memorandum at page 4.) In the case of *Azose v. J.P. Morgan Chase Bank* the entity that received the fee was Chase. However, Chase's motion to dismiss was granted. (See GCN's Memorandum at page 5.) This shows that receipt of the fee is different that imposition of the fee.

RBS Worldpay Inc. also asserts that Global Cash Network, Inc. processes the transactions. (See RBS' Memorandum at page 4.) In the course of processing the transaction, Global Cash Network, Inc. is contractually obligated to use reasonable efforts to comply with applicable laws and regulations, and to obtain necessary licenses, permits or registrations to

3

conduct its business and provide processing. (See Section 14 of the Master Processing

Agreement [hereinafter referred to as "Agreement"] is between Global Cash Network, Inc. and

Susie's Drive In, Ltd.)  Global Cash Network, Inc. is also required to pay Susie's Drive In, Ltd.

for each transaction made on the ATM(s).

     In the Memorandum of Law in Support of Global Cash Network, Inc.'s Motion to

Dismiss Plaintiff's First Amended Class Action Complaint Pursuant to Rule 12(b)(6) [hereinafter

GCN's Memorandum] it is contended that the complaint alleges that Susie's imposed the fee on

the consumer. (See GCN's Memorandum at pages 1 and 2, which refers to paragraph 24 of the

Amended Complaint.)  This argument is based upon misquoting paragraph 24 of the Amended

Complaint. This paragraph alleges:

> 24.    Susie's operator status is evidenced by, at minimum, the Plaintiff's
> ATM receipt, which states that the ATM terminal fee is paid to Susie's.

When viewed as a whole, the Amended Complaint contends that "all Defendants acted jointly to

effectuate operation of the ATM at Issue, they are jointly and severally liable."  (See Amended

Complaint at paragraph 49.) Whether this statement is true is a matter to be determined at trial.

     Until the facts are developed in discovery, it is unknown whether the contractual terms

are followed or breached.  As to Rafaela Sosa, who has not contractual relationship to any of the

Defendants, the case must be decided not simply as to what the contracts provide, but what are

the actual facts.  In other words, regardless of the contractual agreement, who actually operates

the ATM, who actually imposed the fee and who actually is responsible for the placing of signs.

If Global Cash Network, Inc. has a turn key operation, as is alleged in paragraph 29 of the

Amended Complaint, which places the ATM at various locations, programs the ATM, maintains

the ATMs and provides the signs for the ATMs, then the Amended Complaint is plausible on its face that as it relates to Rafaela Sosa and Global Cash Network, Inc. could be the operator that imposed the fees.

### III  Reliance on Contractual Terms.

The lawsuit is brought by Rafaela Sosa.  Rafaela Sosa is not a party to the contractual terms referenced by  and RBS Worldpay Inc. and Global Cash Network, Inc.  RBS Worldpay Inc. asserts that the various agreements define the relationship between RBS Worldpay Inc., Global Cash Network, Inc. and Susie's Drive In Ltd.  (See RBS' Memorandum at page 5.)   However, this does not lead to the conclusion that the various agreements define the relations between Sosa and RBS Worldpay Inc. nor  Sosa and Global Cash Network, Inc.

RBS Worldpay Inc. cites the case of *Dunkin' Donuts, Inc. v. Tejany & Tejany, Inc.* for the principle that a court may look to documents "outside the pleadings" if they are integral to a plaintiff's complaint.  However the case of *Dunkin' Donuts, Inc. v. Tejany & Tejany, Inc.* involved parties who were the franchisor and a real estate entity in litigations against numerous franchisee corporations and certain individual stockholders, and an alleged breach of franchise agreements, and related leases.  See  *Dunkin' Donuts, Inc. v. Tejany & Tejany, Inc.*, 2006 U.S. Dist. LEXIS 2041 (N.D. Ill. Jan. 18, 2006).  Rafaela Sosa is not in a contractual relationship with any of the Defendants.  Therefore, the contractual terms between the Defendants are not integral to Rafaela Sosa's Amended Complaint.    Wherefore the Court should not rely upon the contractual terms and the motions to dismiss filed by RBS Worldpay Inc. and Global Cash Network. Both motions to dismiss should be denied.

## IV.  Contractual Terms

As argued above, Susie's Drive In Ltd. takes the position that the Court, at the pleading

stage, should not rely on the contractual terms between the Defendants.  Without waiving this

argument and because both RBS Worldpay Inc. and Global Cash Network, Inc. in their Motions

to Dismiss refer to the contractual terms, which are attached as exhibits to memorandums in

support of their Motions to Dismiss, Susie's Drive In Ltd. will address these contracts.

RBS Worldpay Inc. entered into an ATM Service Distribution Agreement  [hereinafter

referred to as "Contract"] with Global Cash Network, Inc.  This Contract in section 3.3 provides

that Global Cash Network, Inc., in addition to other responsibilities, will be responsible for

operational testing of Equipment, signage and operating manuals.

The Agreement between Global Cash Network, Inc. and Susie's Drive In, Ltd.,  refers to

Global Cash Network, Inc. as the "Company" and Susie's Drive In Ltd. as the "Merchant."  The

Agreement has various provisions dealing with the operation of the ATM.  These include the

following provisions:

> Company is in the business of providing processing services for ATMs
>
> Section 1. EQUIPMENT. Merchant shall place a(n) ATM(s) on its premises in an indoor location mutually agreed upon by the parties at the locations set forth on Exhibit 1.
>
> Section 2.  AVAILABILITY . . . Merchant shall make the ATM(s) available during reasonable business hours so that Company may perform maintenance or system improvements.
>
> Section 3.  TRANSACTION PROCESSING FEES. . . . Company agrees to pay Merchant for each transaction made on the ATM(s).
>
> Section 5. PROCESS1NG SERVICES. Company agrees to provide data processing services through its agreement with such processing service

company (ies) as Company, in its sole discretion, may select, to process authorized ATM transactions.

Section 8. EXCLUSIVITY. Merchant shall not permit the installation of any other ATM on Merchant's Premises, nor permit the removal or the "ATM(s) from the Premises for the term of this Agreement, except as may be agreed by Company in writing or required by any lessor of the ATM(s).

Section 9. DAMAGE, THEFT, LIABILITY / INSURANCE REQUIREMENTS. . . . Merchant agrees it shall make neither alteration nor addition to the ATM(s), and shall not permit anyone, other than authorized representatives of the Company, to perform any service or repair work on the ATM(s) unless it received Company's prior written authorization.

Section 14. COMPANY: LIMITED LIABILITY TO MERCHANT. Company shall use reasonable efforts to comply with applicable laws and regulations, and to obtain necessary licenses, permits or registrations to conduct its business and provide processing services hereunder.

Section 23. TRADE SECRETS. The processing services provided by Company consist in part of computer programs, procedures, forms, and other related material which have been acquired, licensed to or developed by Company at substantial expense. . . . All specifications, tapes, programs, services and trademarks, and related material developed by or for Company in connection with this Agreement shall be the property of Company and shall be returned to Company upon termination of this Agreement.

These provisions of the Contract and Agreement indicate that Susie's Drive In Ltd. is a passive actor who waits for transactions to be processed and fees to be paid. The Contract provides that transactions processed by Global Cash Network, Inc. are routed by RBS WorldPay Inc. Under the terms of the Agreement, Global Cash Network, Inc. pays Susie's Drive In Ltd. the transaction fees. In the case of *Azose v. J.P. Morgan Chase Bank*, pursuant to an agreement between Chase and Washington Mutual, when consumers used the Chase ATM, Washington Mutual paid an interchange fee to Chase. However this did not mean that Chase imposed the fee on transactions.

*Azose v. J.P. Morgan Chase Bank*, 2010 U.S. Dist. LEXIS 6112 (E.D.N.Y. Jan. 26, 2010).

The passive role of Susie's Drive In is further shown by provisions of the Agreement, which grant Global Cash Network, Inc. the sole discretion to make decisions, specifically Global Cash Network, Inc. has the sole discretion to select who will process authorized ATM transactions. In other respects to the operation of the ATM, Susie's Drive In Ltd. has limited authority. For example Susie's Drive In is unable to alter the ATM. Susie's Drive In is also unable to remove the ATM. All specifications, tapes, programs, services trademarks, and related material developed by Global Cash Network, Inc. are the property of Global Cash Network, Inc. Since Susie's Drive In, under the contractual terms, lacks the actual operational capacity to alter or make additions to the ATM machine, it cannot alter the ATM machine to impose a fee.

The contractual terms do not state that Susie's Drive In Ltd. is the operator of the ATM. If Susie's Drive In Ltd. was both the owner and operator, it would not need the services of Global Cash Network, Inc. The division of the duties, rights and obligations do not impose the day to day operation of the ATM on Susie's Drive In Ltd., as shown by the provisions of the Contract and Agreement quoted above.

There is no simple answer to the issue of who is the operator. At a minimum it cannot be determined at this point in the litigation who is the operator of the ATM. Until this issue is resolved, it is premature to grant either of the motions to dismiss. Wherefore the Motion to Dismiss filed by RBS Worldpay Inc. and Global Cash Network, Inc. should be denied.

## V.  Susie's Drive In Ltd. Is Not is the Operator.

It is contended by Global Cash Network, Inc. that to state a claim under Electronic Funds

Transfer Act (EFTA) that the plaintiff must allege that a defendant is an ATM operator and that

the defendant imposed a fee on a consumer to use the ATM. (See GCN's Memorandum at page

1.)

　　　EFTA's definition of the word "operator" is

> (i) Automated teller machine operator. The term "automated teller machine
> operator" means any person who--
> (I) operates an automated teller machine at which consumers initiate
> electronic fund transfers; and
> (II) is not the financial institution that holds the account of such consumer
> from which the transfer is made. 15 USCS § 1693b(d) (3) (D).

This definition does not provide that the operator is the party that is paid the transaction fee.

RBS WorldPay, Inc. and Global Cash Network, Inc. have not cited cases that further clarify the

word "operator" as used in EFTA. The cases of *Azose v. Wash. Mut. Bank* and *Azose v. J.P.*

*Morgan Chase Bank* do not provide assistance in the issue before this Court because in those

cases, Chase was deemed the automated teller machine operator. *Azose v. Wash. Mut. Bank*, 588

F. Supp. 2d 366 (E.D.N.Y. 2008).

　　　The word operator has been discussed in cases applying the Comprehensive

Environmental Response, Compensation, and Liability Act (CERCLA). It was held that the

word operator should be given its ordinary meanings rather than a technical meaning. See

*Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund*, 25 F.3d 417, 419 (7th Cir. 1994). In cases

concerning the use of the word operator in CERCLA, the courts have held that operator's liability

only attaches if the defendant had authority to control the cause of the contamination at the time

the hazardous substances were released into the environment. To state a claim for CERCLA

operator liability it must be shown that party directly and personally engaged in conduct that led

9

to the pollution at issue in the case.  See *Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund*, 25 F.3d 417, 421-422 (7th Cir. Ill. 1994); *City of Waukegan v. Nat'l Gypsum Co.*, 587 F. Supp. 2d 997, 1006 (N.D. Ill. 2008).

In relation to being an operator, based on the analogy to the cases under CERCLA, liability under EFTA only applies to the entity that had authority to control the cause of the harm. In relation to the Amended Complaint, the harm is the failure to give notice to the user of the ATM.  RBS Worldpay Inc. and Global Cash Network, Inc. have not shown that Susie's Drive In Ltd. had control over the programing of the ATM nor over the notice to the consumer.  Without control over the programing,  Susie's Drive In Ltd. could not program the ATM to charge a fee nor to give notice using the screen on the ATM.

As noted above, the Contract provides that Global Cash Network, Inc. will be responsible for signage.  The Amended Complaint alleges that there was no fee notice posted on or near the ATM at Issue.  (See Amended Complaint at paragraph 12.)  The Amended Complaint further alleges, on information and belief,  that Global Cash Network, Inc. designed, purchased, and installed the above network signage on the ATM prior to the filing of this action   (See Amended Complaint at paragraph 32.)  Under the contractual terms between the Defendants, this allegation is plausible.  The Amended Complaint further alleges that the signage on the ATM machine refers people using the machine to a telephone number that belongs to RBS Worldpay Inc. (See Amended Complaint at paragraphs 38 and 39.)

In relation to the determination of the operator of the ATM, it is significant if there are signs posted referring calls to RBS Worldpay Inc.   Until there is further development of the facts to determine who is the operator, it is premature to grant any motion to dismiss.

10

The position of Susie's Drive In Ltd., is that the party that programs and provides the data processing and signs for the ATM is the operator. The case before this Court presents a factual question. Based upon the unresolved factual question, the motions to dismiss filed by RBS Worldpay Inc. and Global Cash Network, Inc. should be denied.

## Conclusion

For the reasons set out above, the motions to dismiss filed by RBS Worldpay Inc. and Global Cash Network, Inc. should be denied.

Respectfully submitted,
Susie's Drive In, Ltd.

[s] Alan Rhine

Alan Rhine, attorney

Alan Rhine,  State of Illinois Registration No. 232391
111  W. Washington,  Suite 1505
Chicago, Illinois 60602
(312) 201-1770

11

## Certificate of Service

I, Alan Rhine, being an attorney, hereby certify and attest under oath that on November

17, 2010, that pursuant to Court rules, including General Order of Electronic Case Filings (ECF),

that Defendant Susie's Drive In, Ltd.  Response to Motions to Dismiss

was served, electronically addressed to:

Lance A. Raphael lance@caclawyers.com

Allison Amy Krumhorn@caclawyers.com

Stacy Michelle Bardo@caclawyers.com

Jason P Stiehl Seyfarth Shaw LLP jstiehl@seyfarth.com

Jason T. Singleton jsingleton@pkalaw.com

Patrick Christopher Keeley   pkeeley@pkalaw.com

Thomas A. Jackson tjackson@pkalaw.com


[s] Alan Rhine
Alan Rhine, attorney


Alan Rhine,  State of Illinois Registration No. 232391
111  W. Washington,  Suite 1505
Chicago, Illinois 60602
(312) 201-1770

12